Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jesse Helems

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HELEMS, *on behalf of all those similarly situated*, | ) ) ) |
| Plaintiff, | ) )  No. **'22 CV 1120 GPC DEB** |
| *v.* | )  **CLASS ACTION COMPLAINT** ) |
| HONEY BADGER LLC*, a Texas limited liability company*, | )  JURY TRIAL DEMANDED ) ) |
| Defendant. | ) ) |

_____

Jesse Helems ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, hereby brings this action against Honey Badger LLC ("Defendant" or "Honey Badger"), alleging that certain products manufactured, packaged, labeled, advertised, distributed and sold by Defendant are misbranded and falsely advertised in California and nationwide and otherwise violate Texas and California law, and upon information and belief and investigation of counsel alleges as follows:

### PARTIES

1.    Plaintiff Jesse Helems is and at all times relevant was a citizen of the state of California, domiciled in San Diego. On or about March 4, 2022, Helems purchased Honey

Badger's BCAA (Branch-Chained Amino Acid) powder, peach mango flavor, from third-party retailer Amazon (Order #111-9748483-6392262).

2.     Mr. Helems purchased and intended to use Honey Badger's BCAA powder in order to maintain the substantial weight loss he achieved in 2016, when he dropped 150 pounds (out of 300) through cardio-based fitness and, especially, careful tracking to maintain a caloric deficit every day. After losing an additional 15 pounds to get to 135, he decided to add lean mass through strength training supported by controlled caloric intake, using pre- and post-workout supplements such as Honey Badger's BCAA powders.

3.     Mr. Helems' long and arduous weight loss and fitness journey has been accomplished in large part by researching supplements, carefully evaluating their label claims, and carefully measuring his caloric intake. He relies on supplements' label claims and consumes foods, drinks, and supplements with intentionality.

4.     Defendant Honey Badger LLC ("Honey Badger" or "Defendant") is a Texas corporation with its principal place of business in Austin, Texas. Honey Badger's BCAA powders ("the Products") purportedly assist in workout recovery, provide energy, and support memory and cognitive health.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

6.      Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

7.      The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

8.      In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

9.      In the alternative, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest, fees, and costs.

10.     This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

11.     Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

12.     Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

13.     Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

14.     Plaintiff's losses and those of other Class members were sustained in this district.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

16.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

17.     All prerequisites to suit have been satisfied.[1]

## FACTUAL ALLEGATIONS

### A.     Consumers Will Pay A Premium for "Clean Labels."

18.     Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

19.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

20.     This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent

---

[1] Plaintiff intends to amend this Complaint 30 days after service of process to add claims under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. *See also id*. at § 1782(d).

from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

21.     According to Nielsen, more than 40 percent of consumers rate the absence of artificial flavors in their foods as important to them when deciding between competing products, and more than 60 percent try to avoid artificial flavors at least some of the time.

22.     Consumers also have a specific sense of the attributes of "natural" foods. Research by Consumer Reports indicates that nearly 90 percent of consumers believe and expect that foods described as "natural" should contain no artificial ingredients.

**B.    Defendant's Use of Synthetic Flavorings.**

23.     Defendant Honey Badger formulates, manufactures, and sells a number of plant-based dietary supplements that are meant to support workout recovery, among other health benefits. Among those are Honey Badger's "BCAA" powders (pink lemonade, tropical punch, peach mango, wild berry, blue raspberry, and lemon lime flavors).

24.     To appeal to consumers who seek out natural food products and are willing to pay more for them, Defendant labels and advertises the Products as if they were exclusively naturally flavored.

25.     For example, the front label of the BCAA peach mango product purchased by Helems states that the powder is "Naturally Flavored":

1
2
3
4
5
6
7
8
9
10
11
12
13



14   26.   Other flavors of the Products made similar claims regarding the use of natural

15   flavors.

16   27.   All of the back labels of the Products also state that they contain "Natural Flavors,"

17   with no other explicit flavoring statement made in the ingredients list.

18   28.   Attesting to the commercial value of "clean labels," these Products are advertised

19   as having "clean flavors" that are "unmatched for a refreshingly original taste." Honey Badger

20   advertises its Products as "Clean Energy" and promises "clean flavors and no artificial

21   sweeteners or dyes":

22
23
24
25
26
27
28



**OUR PROMISE**

Made in the USA, straightforward, effective, and science-backed formulations with clean flavors and no artificial sweeteners or dyes.

OUR STORY

29.     Using common slang, Honey Badger's website also refers to its Products as "Authentic AF" to cement the association between the brand and clean, natural, and non-artifical ingredients including flavorings.

30.     The references to "clean flavors," as well as the explicit "naturally flavored" and "natural flavors" label claims, lead consumers to believe that only natural flavoring are used in the Products.

31.     These label claims are false. The Products are artificially flavored.

32.     Each of the Products contains an ingredient identified as "malic acid." While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in the large quantities and is almost never used in mass-produced food products. Instead, the malic acid that Defendant uses in these Products is DL malic acid, a synthetic petrochemical.[2]

33.     This type of malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

---

[2] DL malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

34.     Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The sweetness or tartness of a fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as malic acid.

35.     The quality and consumer acceptability of fruit flavors is based on their perceived sweetness and tartness, which in turn is driven by the ratio between sugars and acids. Fruits such as peaches, mangoes, lemons, limes, and berries have their own natural ratio of sugars and acids.

36.     The malic acid used in the Products is used to create, enhance, simulate, and/or reinforce the sweet and tart taste that consumers associate with the characterizing fruit flavors, such as peaches, mangoes, lemons, limes, and berries. As described below, it does so by changing the ratio between acids and sugars in the Products.

37.     Defendant uses the artificial petrochemically derived DL malic acid in its Products to create this sweet and tart flavor but pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers.

38.     The ingredients on the Products' label are declared in a way that is misleading and contrary to law, because Defendant designates the ingredient by its generic name, "malic acid," instead of by its specific name, "DL malic acid."

39.     Even if the malic acid used in the Products is not DL malic acid but is instead L malic acid, it is still not a "natural" flavoring. Almost all l-malic acid used in mass produced food products uses a substrate that is derived from petroleum products. For this reason, for example, organic food producers and advocates have sought to have L malic acid to be struck from the list of additives that can be used in foods labelled "organic."

**C.     Requirements for Labelling—Flavoring**

40.     California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq*., incorporates all food flavoring and additive regulations of the Federal Food,

Drug, and Cosmetic Act ("FDCA"). The regulations require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

41.    Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

42.    Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

43.    Any recognizable primary flavor identified directly or indirectly on the front label of a food Product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

44.    Here, the Products' labels state the characterizing flavors (peaches, mangoes, lemons, limes, berries, and the like).

45.    If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present that "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

46.    A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer

acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

47.   Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

48.   By changing the ratio between sugars and acids that is naturally found in fruits such as peaches, mangoes, lemons, limes, and berries, the DL malic acid used in the Product reinforces, stimulates, or enhances the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

49.   DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source. Rather, it is derived from petroleum products. The Products therefore contain artificial flavorings.

50.   Because the Products contain artificial flavoring, California law requires the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

51.   The Products have none of the required disclosures regarding the use of artificial flavors.

52.   Since first being contacted by Plaintiff's counsel regarding these claims, Honey Badger has altered its labels to state that the Products are "Flavored With Other Natural Flavors." However, this change does not satisfy the FDA's labelling requirements and the Products remain misbranded.

**D.   Honey Badger's Zero-Calorie Claims and FDA's Five Methods**

53.   On its website, Honey Badger claims that the Products contain zero calories. In fact, this claim is made in connection with purported "Third Party Lab Test Results" confirming the company's various claims about the Products:



54.     Honey Badger's website also juxtaposes a zero-calorie claim with a depiction of the Product's Supplements Facts labelling, which is the place that most consumers go to find the caloric content of a supplement (both this image and the above are at https://drinkhoneybadger.com/products/vegan-bcaa, last visited July 25, 2022):

55.     Honey Badger makes similar claims at third-party websites where the Products are sold, such as on Amazon.com (*see* https://www.amazon.com/Honey-Badger-Vegan-Keto-BCAA/dp/B07SR7335N/, last visited July 25, 2022):

- Zero Calories, Zero Sugar, Zero Carbs = Zero Crash: Made with natural stevia leaf extract and noncaloric ingredients meaning it's non-habit forming and won't make you crash mid-workout or post-workout.

56.     Regulations of the U.S. Food and Drug Agency ("FDA") permit the use of any of "Five Methods" of determining the caloric content of foods. *See* 21 C.F.R. § 101.9(c)(i)(1). As a "Third Group" nutrient, or one associated with health concerns, the actual calories per serving of the Product cannot 20 percent of the label claim. *Id*. § 101.9(g)(5).

57.     The FDA provides a clear example of labeling calories for an amino acid-based supplement at https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 calories and is listed as 15 based on pertinent rounding rules:

# Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

| Amount Per Tablet | |
|---|---|
| Calories | 15 |

| | |
|---|---|
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

*Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

58.     Honey Badger lists the "Amino Acid Blend" in the Product as approximately 5 grams per serving as displayed below:

59.     Based on the FDA guidance and consistent with the example provided, the amino acid blend in the Product alone constitutes approximately 25-30 calories per serving. This 25-30 calorie per serving estimate does not include the calories provided by other ingredients.

60.     This analysis is consistent with bomb calorimetry analysis that was conducted by an independent laboratory at the direction of Plaintiff's counsel. Bomb calorimetry is one of the FDA-approved "Five Methods."

61.     That analysis revealed that the Product contains 2,040 kcal per pound, or about 1,100 calories in the entire 30-serving container. These results establish that the Product contains about 36 calories per serving.

62.     Honey Badger's zero-calorie representations are thus in direct violation of FDA guidance for labeling calories when present at levels at or above 5 calories per serving and at 5 calorie intervals up to 50 calories. *See* 21 C.F.R. § 101.9(c). The FDA requires manufacturers to declare "total calories" in the Supplement Facts panel "when they are present in measurable amounts," defined as "an amount that exceeds the amount that can be declared as 'zero'" pursuant 21 C.F.R. § 101.9(c). *See* https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-6.

63.     Moreover, in accordance with 21 C.F.R. § 101.60(a)(4), dietary supplements may only make zero-calorie claims when there are less than 5 calories per labeled serving. Honey Badger's Products do not meet this requirement.

64.     Under any of the FDA's relevant Five Methods, the Product is mislabelled, even after subtracting grams of protein to account for indigestibility.

65.     Defendant's advertising deceives consumers, such as Plaintiff, by making the same deceptive representations regarding calorie content.

**E.     All Flavors of the Deceptively Labeled Products are Substantially Similar.**

66.     The Products are offered in multiple flavors. However, each flavor of the Products is substantially similar to other flavors.

67.     All of these Products are made with a base formulation that includes magnesium, sodium, and potassium, as well as monk fruit extract and stevia leaf extract.

68.     All of these Products purport to contain only "natural" flavors, *i.e.*, be free of artificial flavors and preservatives.

69.     These Products are also offered for sale on the Defendant's website for the same price: $29.95 for a 30-serving container of BCAA powder.

70.     The Products also use similar labels, and the deceptive claims are presented in a similar manner.

71.     Because of these similarities, the resolution of the asserted claims will be identical as between the purchased and unpurchased Products.

72.     Because both the products and alleged misrepresentations are substantially similar, Plaintiff's claims related to the Products that he purchased are typical of the claims available to all purchasers of the Products. As such, Plaintiff is an adequate class representative

for a class of purchasers of all of the Products, regardless of whether Plaintiff purchased every flavor of the Products.

73.    Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

74.    Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

75.    Consumers including Plaintiff would reasonably rely on Defendant's statements such that they would not have purchased the Products from Defendant if the truth about the Products' flavoring were known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

76.    Consumers including Plaintiff especially rely on the "Natural Flavors" or "zero calorie" claims made by food product manufacturers such as Honey Badger, as they cannot confirm or disprove those claims simply by viewing or even consuming the Product.

77.    Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons within the United

States who purchased the Products within four years prior to the filing of this Complaint, as well as a California subclass, consisting of all persons within the state of California who purchased the Products within four years prior to the filing of this Complaint.

79.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

80.     Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

81.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

82.     **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation.

83.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products is misleading and deceptive;

b.   Whether a reasonable consumer would understand Defendant's "natural flavors" and "zero calories" claims to indicate that the Products contained only natural

flavorings and were free of calories, and reasonably relied upon those representations;

c.  Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d.  the proper amount of damages and disgorgement or restitution;

e.  the proper scope of injunctive relief; and

f.  the proper amount of attorneys' fees.

84.  Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

85.  In short, these common questions of fact and law predominate over questions that affect only individual Class members.

86.  **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

87.  Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

88.  There are no defenses available to Defendant that are unique to the named Plaintiff.

89. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

90. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

91. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

    a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

    b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

    c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests

of other Class members or would substantively impair or impede their ability to protect their interests.

92.     Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

93.     Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

94.     **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

95.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**TEX. BUS. & COM. CODE § 17.01 *et seq*.**
**Nationwide Class**

96.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

97.     Plaintiff has satisfied all prerequisites to suit.

98.     Plaintiff is a consumer, as defined under the Deceptive Trade Practices Act, and relied upon the false, misleading, or deceptive acts or practices by Defendant, as set forth above, to his detriment.

99.     All of the above-described acts, omissions, and failures of Defendant are cause of an actual and proximate cause of Plaintiff's damages.

100.   Because Defendant's actions and conduct as set forth herein were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Defendant having knowingly committed its conduct. Additionally, Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Defendant having intentionally committed such conduct.

101.   As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct as set forth herein, Plaintiff has been forced to retain the legal services of the undersigned attorney to protect and pursue these claims on his behalf. Accordingly, Plaintiff also seeks to recover his costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Plaintiff may show himself to be justly entitled at law and in equity.

**COUNT 2**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "UNFAIR" CONDUCT**
**California Subclass**

102.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

103.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

104.   Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

105.   Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose accurately the synthetic flavoring used in the Products and deceptively claims the Products contain zero calories.

106.   As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

107.   Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

108.   Defendant publicly disseminated untrue or misleading representations regarding the flavoring and other claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

109.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 3**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "FRAUDULENT" CONDUCT**
**California Subclass**

110.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

112.   Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

113.   Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose accurately the synthetic flavoring used in the Products and deceptively claims the Products contain zero calories.

114.   As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

115.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

116.   Defendant publicly disseminated untrue or misleading representations regarding the flavoring and other claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

117.    Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq.*

### COUNT 4
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### SECTION 17200 *et seq.* — "UNLAWFUL" CONDUCT
### California Subclass

118.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

119.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

120.   Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

121.   Defendant's business practices, as alleged herein, are "unlawful" because it fails to disclose accurately the synthetic flavoring used in the Products and deceptively claims the Products contain zero calories.

122.   As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

123.   Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

124.   Defendant publicly disseminated untrue or misleading representations regarding the flavoring and other claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

125.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 5**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *et seq.***
**California Subclass**

126.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

127.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

128.   Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

129.   Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

130.   Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

131.   At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq.*

132.   Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq.*

**COUNT 6**
**UNJUST ENRICHMENT**
**Nationwide Class**

133.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

134.   Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the character of the flavoring in the Products and the caloric content of its Products.

135.   Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

136.   Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium, above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

137.   Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

138.   Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

139.   Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

140.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a.   Certifying the Class;

b.   Declaring that Defendant violated the statutes set forth above;

c.   Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein;

d.   Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff pursuant to the statutes set forth above and the common-law private-attorney-general doctrine;

f.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.   Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED.

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

August 1, 2022

CLASS ACTION COMPLAINT